City of Chicago, a Municipal Corporation, Plaintiff-Appellant, v. United States Fire Insurance Co., a Corporation, Defendant-Appellee.

Gen. No. 53,602.

First District.

May 15, 1970.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Marvin E. Aspen, Assistant Corporation Counsel, and Peter Fitzpatrick, Special Assistant Corporation Counsel, of counsel), for appellant.

Ruff and Grotefeld, of Chicago (William S. Grotefeld and John E. Guy, of counsel), for appellee.

RYAN, J.

This is a suit for declaratory judgment on an insurance policy. The City of Chicago brought the action to establish its right to be defended under a certain policy of insurance issued by the United States Fire Insurance Company. At the conclusion of plaintiff's evidence, the trial court granted defendant's motion for judgment. The City appeals.

The defendant insurance company issued an insurance policy covering liability for events arising out of a certain highway construction project. During the policy period, on August 2, 1962, Patrick J. Daly, a welder on the project, fell from a scaffold and was injured. On March 14, 1963, Daly sued the City and alleged damages of $700,000. The City first notified the insurance company of the accident and the suit on September 1, 1967.

At the time of the accident, Daly was an employee of Bethlehem Steel Company who was a subcontractor to the O'Neil Construction Company. The highway project was being built for and under the direction of the City of Chicago. The injured party was working on the Canal Street overpass of the Dan Ryan Expressway.

There seems to be no dispute as to the facts involved in this appeal. The City knew of the accident through its engineer and a policeman who was summoned to the scene. Formal statutory notice, previous to the filing of the lawsuit against the City, was served on the City by the injured party on January 9, 1963. Summons was

341

served on the City on March 15, 1963. The City filed its appearance about April 11, 1963, and thereafter participated in legal procedures without notifying the defendant insurance company until September 1, 1967.

The City explains that this delay in notification occurred because the insurance policy was misfiled with the City's Engineering Department instead of the City Comptroller who maintains an index of all policies filed with him. Apparently, at the time of the accident and the lawsuit, no one in the City's employ checked for this policy beyond the City Comptroller's office. Later, in August of 1967, the head of the City's Torts Division checked with the Department of Engineering and located the policy which is the subject matter of this lawsuit.

The insurance company declined to defend the City due to the City's failure to notify the insurance company of the accident or the lawsuit as required by the terms of the policy and this suit for declaratory judgment resulted.

The relevant provisions of the insurance policy are as follows:

"9. Notice of Accident. When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

"10. Notice of Claim or Suit—Coverages A, B, and D. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company, every demand, notice, summons or other process received by him or his representative.
". . .

342

"13. Action Against Company—Coverages A, B, and D. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

It is the contention of the City that late notice of the claim and of the lawsuit does not relieve the insurance company of its obligation to furnish a defense in the case for three reasons: First, because this policy was issued to protect a municipality in the discharge of a governmental function and is therefore subject to the public policy of conserving public assets. Second, because the delay was excusable under the circumstances, since the policy was misfiled. Third, because the defendant was not prejudiced by the delay since there was available to the defendant insurance company extensive investigations of the accident made by two other insurance companies, the injured man's employer, the injured man's lawyers and the City.

■■ As to the first contention, contrary to the City's position, we deem it of no significance that the insured in this case is a municipal corporation. The City's argument misapprehends the issue in this case. The City of Chicago, to the extent that it is a named insured under a liability policy, is a contracting party. The fact that it is a municipal rather than a private corporation does not alter its status as an entity contracting with another entity. The City entered into an insurance contract containing several commonly used and clearly understood clauses. The insurance company, as a part of its insurance contract, was entitled to insist on notice of an accident

"as soon as practicable" and notice of claim or suit "immediately." The City argues, however, that these contract terms do not apply to it since they operate to violate the principle of conserving public assets. In this connection, we have considered the numerous Illinois cases cited by the City on this point. All of these cases are distinguishable from the instant case as they deal with either laches or rights created by statutes and not with specific obligations under a contract. We do not find any principles of law in these decisions which hold that a city is not bound by its legitimate contracts which are freely and properly made and which do not violate public policy. If cities are not to be bound by such contracts for reasons of public policy, such decisions must be made by the people acting through their state legislature and not through the courts. Presumably, municipalities could be prohibited from entering into insurance contracts which require them to give notice of accidents or lawsuits and it could be established as a condition of doing insurance business with municipalities that such clauses not be used. Such, however, is not now the law of this state and was not the law at the time the insurance contract in question was entered into. The principle that a municipality must comply with its contractual obligations has repeatedly been asserted by the highest court of this State and must here again be recognized and affirmed.

In Wall v. Chicago Park Dist., 378 Ill 81, 37 NE2d 752, our Supreme Court said at page 93:

> "Neither these authorities, nor those from other jurisdictions relied upon by defendant, purport to hold that a governmental body is under no obligation to perform its contracts. On the contrary, the rule is well established that a municipal corporation, so far as the performance of its contracts is concerned, and unless its charter clearly provides to

344

the contrary, must abide by its contractual obligations. Chalstran v. Board of Education, 244 Ill 470; City of Quincy v. Bull, 106 Ill 337. As this court pertinently observed in the case last cited: 'Where there is power to make a contract, there is power to make one that shall bind. We see no more to be involved here than the simple law of contract,— whether a municipal corporation may at its will repudiate the obligation of a fair contract which it has made, and which it was authorized to make. . . . The City must be bound by the contract and grant it has made, and had authority to make, the same as would an individual.' "

Appellant's second contention that the delay was excusable under the circumstances, since the policy was misfiled, is likewise without merit. The fact of the matter is that the policy was filed with the Engineering Department. Whether this constitutes misfiling, is a matter of conjecture. The office of the City Comptroller seems to be the approved repository for insurance policies. We do not think it unreasonable to assume, however that if it was the policy of the City to take out liability insurance on highway construction projects, then failure to locate the policy in the Comptroller's Office when the accident occurred, should have prompted a further search. And if a further search had been undertaken, it would have been reasonable to make inquiry with the Engineering Department who had charge of the project. However, no one looked there or beyond the Comptroller's Office until August of 1967 when the policy was located in the Engineering Department. There is nothing to indicate that the policy was stolen or lost; nor is there any explanation or excuse offered as to why the policy was with the Engineering Department instead of the Comptroller's Office. If the policy was merely filed with the wrong department and if no search was made for it beyond a rou-

tine inquiry with the Comptroller's Office, the fault, if any, lies with the City.

The subject of excuses for delayed notice in insurance liability cases was extensively reviewed at 18 ALR2d 470. We learn there that courts have, on occasion, excused a late notice where the insured was ignorant of the accident or injury; where the insured, acting as a reasonable man, believed that he was not liable; where, due to the trivial nature of the occurrence, the insured believed no claim would be filed; or where the insured, acting as a reasonably prudent person, believed that the accident was not covered by the policy. The instant case falls within none of these categories.

In the case of International Harvester Co. v. Continental Cas. Co., 33 Ill App2d 467, 179 NE2d 833, the court found that the insured did not use due diligence to determine the existence of a policy of insurance and was consequently not excused for late notice. In that case, the Appellate Court ruled against the insured regarding a policy of insurance held by another yet covering the accident. The Court said at page 472:

> "To operate as an effective excuse for delay, however, lack of knowledge must be without negligence or fault on the part of the person seeking to be excused. The beneficiary's ignorance of the policy, then, becomes only one of the circumstances to be considered in determining whether or not due diligence was exercised in the giving of notice 'as soon as practicable.' Allstate Insurance Company v. Hoffman, 21 Ill App2d 314; Unverzagt v. Prestera, 13 A2d 46 (Pa); Sanderson v. Postal Life Insurance Co. of New York, 87 F2d 58; Sheehan v. Aetna Life Insurance Co., 6 NE2d 777 (Mass); 75 ALR 1504; 18 ALR2d 478; 29A Am Jr § 1390."

The Court went on:

346

"When we examine all the circumstances, we must give due consideration to the fact that the plaintiff is the International Harvester Company, a large industrial corporation, and not a person unsophisticated in the world of commerce and insurance. We must decide whether the plaintiff, with all the record-keeping and investigative services at its command, acted with anything less than due diligence in being unable for twenty-one months to ascertain the identity of the truck being unloaded at the time of the injury to Huttel, an accident which was promptly reported by plaintiff's employees concerned, on the day of its occurrence. To state the problem is to indicate its proper solution."

In the International Harvester case, the Court found that the insured had not used due diligence in locating the insurance policy of another. In the instant case, we are not concerned with locating a policy of insurance in the possession of some other party. Rather, we have the situation where the policy of insurance was in the physical possession of the insured itself at all times. Its failure to find the same can be attributable to the negligence or lack of diligence of the city itself. Therefore, we do not feel that the City has shown excusable delay in this case.

Appellant's third contention that the trial court should not have found for the defendant without a showing by the defendant that it was prejudiced by the delay is not supported by any cases which have been called to our attention.

The last part of the policy of insurance above quoted specifically makes compliance with the terms of the policy a condition precedent to the right to maintain an action against the company. In such cases where the giving of notice and the forwarding of suit papers have specifically been made conditions precedent to a right

of action against the insurer "We find the authorities overwhelmingly in favor of giving full recognition to such provisions, in which case the presence or absence of prejudice resulting from a delay in giving notice becomes immaterial." State Farm Mut. Automobile Ins. Co. v. Cassinelli, 67 Nev 227, 216 P2d 606, 18 ALR2d 471, 441 (1950).

▮ The issue is not whether the insured has been prejudiced but, rather, whether reasonable notice has been given. Country Mut. Cas. Co. v. Van Duzen, 351 Ill App 112, 113 NE2d 852; Simmon v. Iowa Mut. Cas. Co., 3 Ill2d 318, 121 NE2d 509; Allstate Ins. Co. v. Hoffman, 21 Ill App2d 314, 158 NE2d 428. In this case the trial court found for the defendant at the close of plaintiff's case. Under the law as above stated, it was not incumbent upon defendant to show that it was prejudiced by the lack of notice. Notwithstanding the notice requirements of the policy of insurance, notice was not given by the City to the insurance company until more than five years after the accident and until almost four and a half years after the filing of the lawsuit against the City by the injured claimant. If the notice provisions of the insurance contract have any meaning at all, they have clearly been violated in this case. The City having offered no reasonable excuse nor any excuse falling within those excuses previously discussed as having been recognized, and no waiver of the lack of notice by the insurance company having been shown, we deem the conditions precedent of the contract of insurance breached by the failure of the City to give the required notices. Accordingly, the City is barred from asserting its right to be defended under the policy.

In citing the numerous investigations available to the insurance company, the City has failed to establish that the notice given was reasonable within the requirements of the language of the policy and the applicable law.

348

As stated in the Allstate Insurance case previously cited, the insurance company had a right to make its own investigation. The offer of investigation reports of others is not a substitute for timely notice.

We have considered the numerous Illinois cases cited by the City and fail to find any conflict with the decision herein propounded.

For the reasons given, the judgment of the Circuit Court of Cook County in this case is affirmed.

Judgment affirmed.

STOUDER, P. J. and ALLOY, J., concur.