THE CHARTER OAK FIRE INSURANCE COMPANY, Plaintiff-Appellee, Cross Appellant, *v.* WILLIAM L. SNYDER *et al.*, Defendants—(CARL T. GENG *et al.*, Defendants-Appellants, Cross Appellees.)

(No. 73-132;

Second District—October 1, 1974.

Fuqua, Fuqua, Winter & Homer, of Waukegan, for appellants.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan (Robert L. Snook and Edward A. Puisis, of counsel), for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is a declaratory judgment in which the plaintiff, The Charter Oak Fire Insurance Company, claims that it owed no obligation of insurance coverage to its insured William Snyder with respect to an automobile accident between Snyder and defendant-appellant Carl Geng. After a trial without a jury the circuit court of Lake County found in favor of the plaintiff insurance company on the ultimate issue. In declaring the rights of the parties the court found first, that a policy of liability insurance issued by the plaintiff was in effect at the time of the automobile collision between cars operated by its insured Snyder and Geng, the party injured in the collision and second, that the plaintiff was relieved from liability on such policy because of its insured's failure to give notice as required by the policy. Geng has appealed from the court's determination that notice was not properly given and the plaintiff has cross-appealed from the court's determination that its policy was in effect at the time of the collision.

Since in our view of this case we find no reason for disturbing the judgment of the trial court it will be unnecessary to consider the cross-appeal, and we therefore for the purpose of this appeal accept as correct without further discussion the determination by the trial court that there

was a policy of liability insurance in effect issued by the plaintiff-cross-appellant in favor of Snyder, its insured, at the time of the collision.

Carl Geng was injured as a result of an automobile collision between his car and one operated by William Snyder in Lake County, Illinois, on November 26, 1968. His injuries were severe and on January 15, 1969, he filed his complaint in the circuit court of Lake County seeking to recover damages from Snyder. On the 12th day of July, 1971, a stipulation was entered into by attorneys for Geng, Snyder, Government Employees Insurance Company and Charter Oak by which stipulation the parties agreed that a judgment might be entered against Snyder and in favor of Geng for $50,000 payable solely out of insurance. This amount was computed on the basis of the injuries sustained which were in excess of the amount of the judgment but with regard for the insurance policies issued by Government Employees and Charter Oak which each had a limit of $25,000. Government Employees paid $25,000, the amount of its total liability, to Geng and such company is not a party to this appeal. At the time of the settlement it was known by the parties that Charter Oak claimed that it was not liable and subsequently Charter Oak commenced this supplemental declaratory action seeking a court determination of its liability.

In the summer of 1966 William Snyder, a single man, was in the United States Navy. He was stationed at Guantanamo Bay, Cuba, and his parents resided in Curwensville, Pennsylvania. In September of 1966 he went to the Bellmore Insurance Agency in Curwensville and applied for insurance coverage. Pursuant to his application a policy of insurance was issued to Snyder by Travelers Insurance Company. The address used in the policy was the Curwensville address of Snyder's mother. When the policy came through from Travelers the agency mailed the policy and their statement to Snyder at the Curwensville address and Snyder paid the bill.

During the month of August, 1967, Snyder was transferred from Guantanamo Bay, Cuba, to Great Lakes, Illinois, and while en route he stopped in Pennsylvania and went to the agency office.

Because of some prior accidents Travelers elected and notified the agency that it would renew Synder's coverage only on a sub-standard basis using the Charter Oak Fire Insurance Company policy in lieu of a Travelers policy.

A new policy showing the Charter Oak Company name was issued by Travelers. The agency sent the policy and the bill for the premium to Snyder at his mother's Curwensville, Pennsylvania, address on September 7, 1967, and the bill was paid.

In September of 1968, the renewal policy was written and, following the procedure of the last 2 years, was sent to Snyder with the bill at his mother's address in Curwensville. Snyder, however, did not pay the premium statement until December 6, 1969.

According to John Bellmore, who did business as the Bellmore Insurance Agency, he continued to send monthly statements to Snyder at the Curwensville address for the policy in effect for the period September, 1968, to September, 1969, but received no response. After a conversation with Snyder's mother Bellmore sent a letter to Snyder at his Great Lakes address dated November 19, 1969, requesting payment for the prior year the policy was in effect. As a result of this letter Snyder on December 6, 1969, paid the amount requested by Bellmore.

According to Snyder the November 19, 1969, letter from Bellmore was the first and only inkling that the Charter Oak policy had been issued for the September, 1968-1969, period because after moving to Great Lakes he had requested his mother in Curwensville to tell the Bellmore agency that he did not wish to renew the policy. Snyder's mother did not notify the agency. Supposing his mother to have so notified the Bellmore agency Snyder applied for and received insurance from the Government Employees Insurance Company which was in effect after September, 1968. As indicated earlier, the collision between the Geng and Snyder cars occurred on November 26, 1968 some 11 months prior to Snyder learning of the Charter Oak policy. What happened before and after Snyder learned of the policy regarding his notice to the company of the collision with Geng is the principal source of the controversy which we shall discuss on this appeal.

In considering the complaint for declaratory judgment and the answer thereto the evidence presented to the trial court was entirely documentary. The principal documents bearing on this controversy are the insurance policy, Snyder's deposition, Bellmore's deposition and the letter of November 19, 1969. There were other exhibits tending to support or expand some of the matters referred to in the depositions.

In seeking to reverse the judgment of the trial court appellant Geng urges that under the circumstances the provision of the insurance policy regarding notice of the details of the collision was properly given to the insurer and consequently the trial court erred in holding contrarywise.

The insurance policy included the provision:

"In the event of an accident or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the

company or any of its authorized agents as soon as practicable * * * If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative."

It is undisputed that according to the usual meaning of the notice provision notice was not given by the insured or on his behalf as soon as reasonably practicable. The question remains whether the circumstances warrant the conclusion that a reasonable excuse existed for the delay. Whether such a reasonable excuse existed is the issue which the trial court was required to decide, and it decided that reasonable excuse justifying delay did not exist.

In his view of the facts appellant Geng insists that Snyder had no knowledge that the Charter Oak policy had been renewed until receiving Bellmore's letter dated November 19, 1969, and that his lack of any knowledge of the policy excused his failure to give notice during that period. Furthermore, the November 19 letter indicated that Bellmore had received notice of the collision from Snyder's mother sometime before November 19 since an incident is referred to in the letter.

In support of the trial court's determination the insurance company contends the evidence shows Snyder was negligent in ascertaining the existence of his policy and that in fact the company did not receive notice of the collision until March 10, 1970, approximately 4 months after Snyder knew of the policy. According to the insurance company it did not receive any notice of the collision with Geng from Snyder's mother and the letter of November 19, 1969, does not support Geng's conclusion that such notice was given.

From the documentary exhibits it appears that Snyder was aware that his previous policy with the insurance company expired on September 8, 1968. Because he had become eligible for Government Employees insurance he had decided to make the change and asked his mother to advise Bellmore of his desire not to renew the policy. On September 20, 1968, Snyder was involved in a one-car collision in Round Lake, Illinois, when he ran off the road and hit a tree resulting in damages of $1,477.68 to his car. Because the Government Employees policy had not come through yet he paid for the repair of the car himself and made no claim against the Government Employees company. Snyder was involved in a second collision on November 26, 1968, with the Geng car and at this time his Government Employees policy was in effect and Snyder notified Government Employees company within a day or two after this collision.

Bellmore continued to send monthly statements for the premium due

on the policy expiring September, 1969, to the Curwensville, Pennsylvania, address. According to Snyder none of these letters or bills was forwarded to him and his mother made no mention of them until one dated November 11, 1969, was forwarded to him. Thereafter Snyder called his mother who in turn called the Bellmore agency and Bellmore sent Snyder a letter dated November 19, 1969, as follows:

"We have been sending you monthly statements every month for the past two years of your automobile insurance. Now finally when we start to institute legal action I receive a call from your Mother on Grampian Road advising me, that you are in Great Lakes and that your car was demolished.

We paid the $377.00 for your automobile insurance back in the fall of 1968 so you did have the insurance in force. You should have contacted me immediately when your automobile was wrecked.

We are looking to you for the $377.00 payment and if you will send me the details of your accident I will see what I can do for you there. You definitely owe the $377.00 and we will expect payment in full within 30 days.

Your insurance expired September 8, 1969 and you have not had insurance since that date, as you ignored the two notices we sent you asking you if you wanted it renewed.

Please forward payment within the next 30 days."

Pursuant to the request for payment in Bellmore's letter of November 19, 1969, Snyder sent the requested payment to Bellmore on December 6, 1969, the payment being made without comment or explanation. On January 2, 1970, Snyder sent a letter to Bellmore regarding his claim for $1,477.68 together with repair bills referring only to the loss on September 20, 1968. Sometime later Snyder discussed the Charter Oak policy with a representative of the Government Employees company which resulted in a letter from Government Employees on March 10, 1970, to the Bellmore agency which included a report concerning the November 26, 1968, collision with the Geng automobile.

■■ The reasons for the usual insurance policy provision requiring that notice of a loss covered by the policy be given to the insurer as soon as reasonably practicable have often been stated and do not require extensive exposition in this opinion. (See *City of Chicago v. United States Fire Insurance Co.*, 124 Ill.App.2d 340, 260 N.E.2d 276, *Vignali v. Farmers Equitable Insurance Company*, 71 Ill.App.2d 114, 216 N.E.2d 827, *H. H. Hall Construction Co. v. Employers Mutual Liability Insurance Co.*, 43 Ill.App.2d 62, 193 N.E.2d 51, *Hoffman & Klemperer Co. v. Ocean*

*Accident & Guarantee Corp.* (7th Cir. 1961), 292 F.2d 324, *Hawkeye-Security Insurance Co. v. Myers* (7th Cir. 1954), 210 F.2d 890, and *International Harvester Co. v. Continental Casualty Co.,* 33 Ill.App.2d 467, 179 N.E.2d 833.) In determining whether a delay in giving notice of a loss to an insurer is justified neither the absence of prejudice nor lack of knowledge concerning the existence of the policy conclusively establish the timeliness of the notice even though such factors are important considerations in determining the propriety of the notice and the diligence of the insured. *City of Chicago v. United States Fire Insurance Co.,* 124 Ill.App.2d 340, 260 N.E.2d 276.

■■ We find it unnecessary in the instant case to decide whether Snyder's ignorance of the policy prior to November, 1969, excused his delay in giving notice for nearly 11 months after the collision, because in our view of the case there is evidence from which the trial court could properly determine that the delay in giving notice after Snyder admittedly knew of the policy was not justified. With respect to this issue it seems to be the appellant's position that as a matter of law the trial court was required to hold that the insurer did receive notice of the Geng collision prior to November 19, 1969. We do not believe the letter of November 19 supports the appellant's contention. On the other hand we conclude that both the language of the letter and Snyder's subsequent conduct as well as the absence of any other evidence regarding notice amply support the court's determination. It may be inferred notice of the Geng collision was not given by Snyder's mother to the Bellmore agency and that the first notice of the Geng collision was given to the insurer by the Government Employees company on March 10, 1970, nearly 4 months after Snyder learned of the existence of the policy. At best the November 19 letter is equivocal. However, Snyder's letter of January 2, 1970, refers only to the September 20 collision and supports the inference that it was the September 20 collision referred to in Bellmore's letter.

■■ We believe the two principal cases relied on by the appellant, namely, *Hoffman & Klemperer Co. v. Ocean Accident and Guarantee Corporation,* 292 F.2d 324 and *H. H. Hall Construction Co. v. Employers Mutual Liability Insurance Co.,* 43 Ill.App.2d 62, 193 N.E.2d 51, do not support appellant's position that notice in this case was timely as a matter of law but rather suggest that a trial court's determination of such an issue should not be disturbed. It is our conclusion there is ample evidence from which the trial court could have concluded that notice of the Geng collision was not given to the insurer until approximately 4 months after Snyder knew of his policy and that under the circumstances such delay was not justifiable or excusable.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SCOTT, P. J., and DIXON, J., concur.