ALGIS ANKUS, Special Adm'r of the Estate of Ona Ankus, Deceased, Plaintiff-Appellant, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Defendants-Appellees.

First District (2nd Division) No. 1—95—3266

Opinion filed December 10, 1996, nunc pro tunc October 22, 1996.

Frederick P. Heiss, of Boyle & Heiss, Ltd., of Chicago, for appellant.

James P. DeNardo, Robert P. Pisani, and Kristin L. Dvorsky, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Original plaintiff Ona Ankus (Ona) was injured in an automobile accident. She brought this complaint for declaratory judgment against defendants Commercial Union Insurance Company (Commercial Union) and Government Employees Insurance Company

(Geico), seeking an adjudication as to their liability regarding her uninsured motorist claim. The circuit court granted summary judgment in favor of both Commercial Union and Geico. Following Ona's death, her son, plaintiff Algis Ankus (Algis), was appointed special administrator for the purposes of this action. He appeals the grants of summary judgment. For the reasons that follow, we affirm.

In his deposition, Algis testified that on June 10, 1984, he was driving north on Lake Shore Drive in Chicago in his Toyota Supra. Ona was a passenger in his car, while his wife, Lynda Twist, followed directly behind in a Honda Accord. He struck the rear of a black Pontiac that cut in front of him. When he braked and hit the Pontiac, his wife hit him. Ona was injured, subsequently claiming damages of $10,000.

Algis testified that he pulled to the side of the road behind the Pontiac, but it pulled away. Neither the Pontiac nor its driver was ever identified.

At the time of the accident, Algis was employed by Cardiac Pacemakers, Inc. Commercial Union provided uninsured motorist coverage for individuals injured while riding in cars owned by Cardiac Pacemakers.

On June 9, 1986, Ona filed a demand for arbitration against Commercial Union with the American Arbitration Association. Although the American Arbitration Association closed its file on the matter on February 7, 1989, Ona again demanded arbitration on December 6, 1990. Her deposition was taken on October 11, 1991.

Although the matter was set for arbitration on February 9, 1994, Commercial Union refused to participate because, among other reasons, it had not deposed Algis. The matter was reset for September 7, 1994.

On May 23, 1994, Algis' sworn testimony was taken. On June 9, 1994, Commercial Union advised Ona's attorney that it would deny coverage because Algis was the owner of the car in which Ona was a passenger and the coverage that it provided to Cardiac Pacemakers was limited to cars owned by Cardiac Pacemakers. Commercial Union stated that it believed that Algis had coverage through Geico.

On June 9, 1994, Ona notified Geico that she was making an uninsured motorist claim. That day, she brought a complaint for declaratory judgment against Commercial Union and Geico seeking an adjudication as to their liability.

On April 11, 1995, summary judgment was granted in favor of Commercial Union and, on August 15, 1995, in favor of Geico. Following Ona's death from causes unrelated to the 1984 accident, Algis was appointed special administrator for the purposes of this litigation. He appeals the grants of summary judgment.

Plaintiff first contends that the circuit court erred in granting summary judgment in favor of Commercial Union. He argues that Commercial Union is estopped from denying coverage by its eight-year delay in denying coverage because Ona detrimentally relied on its indications that it was the insurer of his vehicle. We note that plaintiff does not contend that Algis was in fact covered by Cardiac Pacemakers' policy. Commercial Union responds that plaintiff cannot establish any of the elements of estoppel.

In appeals from an order granting summary judgment, a reviewing court examines the record *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). A court must consider the affidavits, depositions, admissions, exhibits, and pleadings on file and must construe the evidence strictly against the movant. *Hoover*, 155 Ill. 2d at 410-11. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ Estoppel " 'prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense.' " *Schoonover v. American Family Insurance Co.*, 214 Ill. App. 3d 33, 45, 572 N.E.2d 1258 (1991), *appeal denied*, 141 Ill. 2d 560, 580 N.E.2d 134 (1991), quoting *First Federal Savings & Loan Ass'n v. Nationwide Mutual Fire Insurance Co.*, 460 A.2d 543, 545 (Del. 1983). An insurer is estopped from denying coverage where the insured can establish that he was misled by an act or statement of the insurer, he reasonably relied on the conduct or representation, and he was prejudiced thereby. *Seegers Grain Co. v. Kansas City Millwright Co.*, 230 Ill. App. 3d 565, 571, 595 N.E.2d 113 (1992), *appeal denied*, 146 Ill. 2d 652, 602 N.E.2d 476 (1992). The burden of establishing estoppel rests with the insured, who must prove it by clear, concise, and unequivocal evidence. *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 500, 475 N.E.2d 872 (1985).

■ Cases in which an insurer is estopped from denying coverage typically involve a concession of liability by the insurer, advance payments made by the insurer, or statements made by the insurer that encourage the plaintiff to delay filing his action. *Schoonover*, 214 Ill. App. 3d at 45.

In claiming that it effectively reserved its right to deny coverage, Commercial Union relies on an August 1986 letter that it sent to Ona's attorney in response to her first demand for arbitration. That letter provided in relevant part:

"In reviewing the file, it appears that there may be a coverage

question which exists. The demand for arbitration that you filed with the American Arbitration Association was filed on June 9, 1986 and was not received by Commercial Union Insurance Company until June 11, 1986. This was the first notice that Commercial Union Insurance Company received that your client, Ona Ankus, was making an uninsured motorist claim arising out of the accident in question of June 10, 1984. Please advise as to whether or not you have filed a lawsuit on behalf of Ona Akus [sic] against Algis Ankus, the driver of the vehicle in front of the vehicle in which Ona Ankus was riding. It is our understanding that the vehicle being operated by Algis Ankus was insured by Geico. If such a lawsuit was not filed against Algis Ankus prior to the running of the applicable statute of limitations, it would seem that the subrogation rights of Commercial Union Insurance Company relative to Ona Akus' [sic] uninsured motorist claim have been prejudiced thereby creating the aforementioned coverage question. Accordingly, Commercial Union Insurance Company reserves all of its rights relative to this coverage question."

In reserving all of its rights relative to *this* coverage question, a subrogation claim, Commercial Union failed to reserve its rights regarding the specific coverage defense here—that Algis was not covered by its policy.

■ From the quoted language, however, it is clear that Commercial Union did not convey the impression that it was the insurer of Algis' vehicle. Not only does the letter state that it was Commercial Union's understanding that Algis' car was insured by Geico, but it also shows that Commercial Union was under the mistaken impression that Ona was in the Honda Accord driven by Twist, not in Algis' Toyota Supra. The reasonableness of this mistaken impression is supported by two facts. First, the police report mistakenly lists Ona as being a passenger in vehicle number one, the hit and run vehicle, and the total number of occupants of both Twist's and Algis' cars is recorded as two. Thus, the police report is unclear as to which car Ona was riding in.

Moreover, Commercial Union insured the Honda Accord, a fact of which Algis was aware. The record on appeal shows that Cardiac Pacemakers sent a letter to Commercial Union regarding repairs to an "insured vehicle"; Algis sent a letter to Cardiac Pacemakers requesting reimbursement for repairs to a "company car"; and Commercial Union paid Cardiac Pacemakers for a June 1984 claim for repairs to a Honda Accord. We note that Algis did not request that Commercial Union pay for property damage to the Toyota Supra that he was driving. Thus, based upon an inaccurate police report and payment for property damage to the Honda, it was not unreason-

able for Commercial Union to assume that Ona was in the Honda driven by Twist, not in the Toyota Supra driven by Algis.

Significantly, Ona did nothing to correct this mistaken impression until February 26, 1991, when her attorney sent the American Arbitration Association a letter stating that Ona was in the car operated by Algis. Shortly thereafter, in a letter dated April 22, 1991, Commercial Union confirmed that it would take Ona's deposition and it reserved its rights regarding "any and all coverage defenses which it may have."

Because Ona knew that Commercial Union was operating under a mistaken assumption regarding coverage and did nothing to correct it, plaintiff has failed to raise a genuine issue of material fact that, in the period before April 22, 1991, Ona *reasonably* relied on any acts or representations of Commercial Union in participating in the litigation. Commercial Union in no way impliedly conveyed the impression that it was Algis' insurer. Moreover, in the April 22, 1991, letter, Commercial Union reserved its rights regarding *any* coverage defenses that it might have. That letter is further evidence that Commercial Union did not foster any impression that it would pay the claim.

As for the events from April 1991 to February 1994, Commercial Union sent 12 letters requesting Ona's attorney's help in taking Algis' deposition. In March 1994, Ona's attorney stated that he would not aid Commercial Union in locating Algis or in taking his deposition. Ona's attorney's refusal to help Commercial Union locate Algis further militates against any finding that Commercial Union was somehow misleading Ona or that Ona was prejudiced by the delay, a delay that could have easily been avoided simply by providing Algis' location.

Following Ona's attorney's refusal to help, Commercial Union hired a private investigator, who promptly located Algis. On March 22, 1994, Commercial Union requested Algis' sworn statement. His deposition was taken on May 23, 1994, and coverage was denied June 9, 1994. Thus, once Commercial Union had the proof necessary to deny coverage, it did so in a timely manner.

In short, although Commercial Union participated in preliminary matters related to the arbitration, plaintiff has failed to raise a genuine issue of material fact that Ona reasonably relied on its actions or that she was genuinely misled by them. Ona waited two years before first indicating that she would seek an uninsured motorist claim by filing a demand for arbitration. She failed to pursue arbitration, causing the American Arbitration Association to close its file on the matter, and then she waited approximately 10 months to

refile her demand. Most important, she permitted Commercial Union to operate on a mistaken assumption for approximately five years. When notified that Algis was the driver of the car, Commercial Union reserved all coverage issues, and when it had proof that he was in fact the driver, it promptly denied coverage.

Arguably, Commercial Union was not without culpability for the delay. It could have promptly hired a private investigator to locate Algis, rather than waiting for the information from Ona's attorney, and it could have taken some independent action to determine in which car Ona was a passenger. Nevertheless, because of Ona's and Algis' knowledge, plaintiff cannot now contend that Ona was misled by Commercial Union's behavior, especially in light of the August 1986 letter that stated that it was Commercial Union's understanding that Algis was insured by Geico.

As for plaintiff's contention that a surreply would have provided additional facts essential to the circuit court's determination, he made no offer of proof in the circuit court as to what those facts might be nor has he provided affidavits attesting to those facts on appeal. Thus, we have no basis for concluding that a surreply would have aided his case.

Accordingly, plaintiff has failed to raise a genuine issue of material fact as to whether Commercial Union should be estopped from denying coverage. The grant of summary judgment in favor of Commercial Union is affirmed.

Plaintiff also challenges the circuit court's grant of summary judgment in favor of Geico. He contends that Ona served Geico with notice of her claim the day that she became aware that its policy applied to her claim. Geico responds that Ona failed to act as a reasonably prudent person in giving notice 10 years after the accident.

In Illinois, timely notice of an insurance claim is not merely a technical requirement but is a valid prerequisite to coverage. *Industrial Coatings Group, Inc. v. American Motorists Insurance Co.*, 276 Ill. App. 3d 799, 807, 658 N.E.2d 1338 (1995). The time within which notice must be provided is determined by a standard of reasonableness. *Fletcher v. Palos Community Consolidated School District No. 118*, 164 Ill. App. 3d 921, 926, 518 N.E.2d 363 (1987). Four factors are utilized in assessing the reasonableness of an insured's actions: (1) the language of the policy's notice requirement; (2) the extent of the insured's sophistication in the world of commerce and insurance; (3) awareness on the part of the insured that an " 'occurrence' " has taken place; and (4) once aware of an occurrence, the diligence with which the insured ascertains whether coverage is available. *Brownlee v. Western Chain Co.*, 74 Ill. App. 3d 804,

809, 393 N.E.2d 515 (1979). Courts have also considered whether prejudice to the insurer has resulted from the delay. *Olivieri v. Coronet Insurance Co.*, 173 Ill. App. 3d 867, 871, 528 N.E.2d 986 (1987).

■ Here, Geico's unambiguous notice requirement provided that notice must be given "[a]s soon as possible after an accident." Moreover, the parties do not dispute Ona's lack of sophistication or her immediate awareness of an "occurrence."

The parties disagree as to whether Ona acted with diligence in waiting approximately 10 years to ascertain whether policy coverage was available. Plaintiff contends that Ona relied on Commercial Union's representations; she had no way of knowing that Geico's policy covered her claim; she notified Geico on the day she learned of the policy; and Geico was not prejudiced by the delay.

Despite her relative lack of sophistication in insurance matters, however, Ona was advised by Commercial Union in 1986 that it was its understanding that Algis' car was insured by Geico. Although this statement was not definite, it should have been sufficient for her attorney to investigate whether Algis' car was in fact covered. Coverage could have been confirmed by a simple phone call to Geico or a request for the policy. Thus, Ona was not reasonably diligent in ascertaining whether Geico insured plaintiff's car. Combining that factor with the unambiguous language of the policy and her immediate awareness of the accident, we conclude that plaintiff failed to raise a genuine issue of material fact as to whether Ona acted as a reasonably prudent person in notifying Geico of her claim, whether or not Geico was in fact prejudiced by the delay in notification.

Plaintiff contends, however, that even if the notice was late, its untimeliness is excused by *City of Chicago v. United States Fire Insurance Co.*, 124 Ill. App. 2d 340, 260 N.E.2d 276 (1970). In that case, the court held that late notice may be excused where the insured, acting as a reasonably prudent person, believed that the accident was not covered by the policy. *United States Fire*, 124 Ill. App. 2d at 346. In light of our conclusion that Ona failed to act as a reasonably prudent person, however, we reject that contention.

Accordingly, Geico was under no duty to provide the uninsured motorist coverage requested. The grant of summary judgment in favor of Geico is affirmed.

The judgments of the circuit court are affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.