NORTHBROOK PROPERTY AND CASUALTY INSURANCE COMPANY, Plaintiff-Appellee, v. APPLIED SYSTEMS, INC., Defendant-Appellant (Harbor Software, Inc., Defendant).

First District (3rd Division)   No. 1—98—1170

Opinion filed May 17, 2000.

Johnson & Bell, of Chicago (Thomas H. Fegan, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (Fritz K. Huszagh, Ilene S. Grant, and Christine L. Olson, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

In this declaratory judgment action, defendant, Applied Systems, Inc. (Applied), appeals the order of the circuit court entering summary judgment in favor of plaintiff, Northbrook Property & Casualty Insurance Company (Northbrook), on the ground that Northbrook had no duty under either of two commercial liability insurance policies to defend or indemnify Applied in a federal lawsuit filed against it by Harbor Software, Inc. (Harbor). The primary issue before us is whether Applied provided Northbrook with timely notification of the Harbor litigation under the policies as a matter of law. We have jurisdiction of the case pursuant to Supreme Court Rules 301 and 303 (155 Ill. 2d Rs. 301, 303), and for the following reasons we affirm.

## BACKGROUND

Applied and Harbor are each businesses engaged in the area of developing and marketing computer software programs to the insurance industry. In the 1980s, Harbor's principal product was an automated management system developed for insurance agencies known as "Sales Center Manager" (Sales Manager). At the same time, Applied marketed a similar, but somewhat less advanced, product called "Agency Manager."

On November 5, 1992, Harbor filed a six-count complaint against Applied in the federal district court of New York alleging claims for copyright infringement, violations of the Lanham Trade-Mark Act (15

U.S.C.A. § 1501 *et seq.* (West 1998)), fraud, misappropriation of trade secrets, unfair competition and unjust enrichment. A copy of Harbor's complaint was served upon and received by Applied's corporate counsel, Mark Camasta, on the same date.

According to the complaint's allegations, Applied contacted Jeffrey Tollaksen, the co-founder of Harbor, in late 1988 to express Applied's interest in either acquiring or licensing the Sales Manager software. Following a meeting between Applied and Harbor associates in January 1989, at which Tollaksen demonstrated the Sales Manager program under Applied's assurances of confidentiality, the parties commenced negotiations regarding the formulation of an agreement that would grant Applied the exclusive licensing rights to Sales Manager.

During the negotiation period, Tollaksen completed, at the request of Applied, a successful integration of Sales Manager with Agency Manager, so as to allow the two programs to operate together. Once the integration of the two programs was complete, Applied abruptly ended negotiations regarding the exclusive licensing agreement and informed Harbor it was no longer interested in marketing the Sales Manager program.

Shortly thereafter, Applied offered a new version of Agency Manager which allegedly performed substantially all of the automated marketing functions of Sales Manager, as well as many other program features. Applied allegedly copied the Sales Manager software and integrated it with the old version of Agency Manager. According to the complaint, Applied "never intended to enter into an exclusive licensing agreement with \*\*\* [it], but instead sought to learn \*\*\* [its] trade secrets, to steal the source code for the [Sales Manager] Program, to fraudulently enlist Mr. Tollaksen's services in adapting the [Sales Manager] Program for Agency Manager, and to unfairly compete with" it. The complaint explains that Harbor first discovered Applied's wrongful conduct when Tollaksen saw an advertisement in an industry publication announcing the new version of Agency Manager.

At the time Harbor filed its lawsuit, Applied was insured under a commercial general liability insurance policy (CGL Policy) and a commercial excess/umbrella liability insurance policy (Excess/Umbrella Policy) (collectively referred herein at times as the policies), both issued by Northbrook. Each policy had an effective coverage period of April 1, 1992, to April 1, 1993.

Coverage B of the CGL Policy, entitled **"Personal and Advertising Injury Liability,"** requires Northbrook in part to "pay those sums that \*\*\* [Applied] becomes legally obligated to pay as damages because of \*\*\* advertising injury to which this insurance applies" and

further "to defend any suit seeking those damages." Coverage B specifically provides coverage for "advertising injury caused by an offense committed in the course of advertising [Applied's] goods, products or services" during the policy period.

The Excess/Umbrella Policy contains two coverage forms, Coverage A and Coverage B. Coverage A, which is entitled "**Excess Liability Over Underlying Insurance**," provides liability coverage over the limits provided in applicable underlying insurance as listed in the underlying insurance schedule and is subject to all the terms and conditions of the underlying policy.[1]

Under Coverage B, entitled "**Umbrella Liability Over the Retained Limit or Insurance Not Listed in the Schedule of Underlying Insurance**," umbrella coverage is provided over the amount in which Applied is self-insured or the limits of insurance not listed in the underlying insurance schedule. The record does not disclose if any other underlying insurance is applicable, but it does reveal that Applied has a retained limit of $10,000.

Per this coverage provision, Northbrook is required to pay those sums Applied "becomes legally obligated to pay as damages because of injury in excess of the retained limit *** or any insurance not specified as underlying insurance, whichever is greater, caused by an occurrence during the policy period." Northbrook is further obligated to "investigate and defend any claim or suit alleging damages insured by Coverages A and/or B" provided no other insurer is obliged to undertake such an investigation or defense. The term "injury" as used in Coverage B specifically includes "advertising injury."

Both polices contain a **"Conditions"** section which discusses, *inter alia*, the insured's duties in the event of an occurrence, claim or suit. The CGL Policy provides in relevant part:

"b. If a claim is made or suit is brought against any insured, [Applied] must:

* * *

(2) Notify [Northbrook] as soon as practicable.

[Applied] must see to it that [Northbrook] receive[s] written notice of the claim or suit as soon as practicable.

c. [Applied] and any other involved insured must:

(1) Immediately send [Northbrook] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit."

---

[1]While the record does not contain the schedule portion of the Excess/Umbrella Policy, both parties indicate that the CGL Policy is listed as the underlying insurance in question.

The Excess/Umbrella Policy imposes similar duties upon Applied, providing:

> "b. If a claim is received by any insured, [Applied] must:
>
> * * *
>
> (2) Notify [Northbrook] as soon as practicable.
>
> [Applied] must see to it that [Northbrook] receive[s] written notice of the claim as soon as practicable.
>
> c. [Applied] and any other involved insured must:
>
> (1) Immediately send [Northbrook] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit."

The term "suit" is defined by the CGL Policy, in part, as "a civil proceeding in which damages because of *** advertising injury to which this insurance applies are alleged." The Excess/Umbrella Policy similarly defines "suit" to mean "a civil proceeding in which damages because of injury to which this insurance applies are alleged."

As part of the discovery process in the underlying litigation, Applied was served with a "Third Set of Document Requests" by Harbor on December 15, 1993. In this document, Harbor requested Applied to produce, *inter alia*, "all documents used in connection or intended to be used in connection with the marketing of the [upgraded version of Agency Manager]."

Approximately four months after its receipt of Harbor's third document request, in late March 1994, Applied tendered its defense in the Harbor litigation by sending notice of the case to its insurance agent, the Lambrecht Agency. Applied specifically sent the agency a statement prepared by Camasta describing Applied's understanding of the coverage afforded under Coverage B of the CGL Policy in relation to the Harbor lawsuit. Camasta explains, both in Applied's statement and in an affidavit filed in connection with Northbrook's summary judgment motion, that Applied did not believe from the averments of the Harbor complaint that Harbor sought damages for any alleged advertising injury caused by the marketing of the new Agency Manager software. According to Camasta, he "assumed" coverage was unavailable because the claims asserted in Harbor's complaint resembled intentional tortious conduct, which he believed was excluded under the policies. Camasta did not base his assumption on any particular provision in the policies, but rather on his understanding from studies in law school. Camasta further explains Applied never evaluated the Harbor complaint to assess whether coverage was afforded by the policies because the advertising injury provisions therein were, in his words, "beyond our comprehension."

Camasta maintains Applied understood for the first time that

Harbor may pursue an advertising injury claim in December 1993 when it received Harbor's request for the upgraded program's marketing materials. Shortly thereafter, Camasta explains he reviewed some legal materials discussing advertising injury coverage. Following his own investigation and research of the subject, Camasta believed Northbrook may be obliged under the CGL Policy to defend Applied in the Harbor litigation and to pay any resulting damages. Camasta's statement to the Lambrecht Agency makes no demand for a defense or indemnification under the Excess/Umbrella Policy.

The Lambrecht Agency advised Northbrook of Applied's tender of defense on April 6, 1994. In response, Northbrook informed Applied by letter dated April 22, 1994, that, for various reasons including the late notification of the Harbor suit, it was disclaiming any coverage under the CGL Policy. Northbrook's letter does not disclaim its duties under the Excess/Umbrella Policy.

On March 2, 1995, Northbrook filed the instant declaratory judgment action against Applied and Harbor, as a necessary party, seeking a determination of its duties under the policies. In particular, Northbrook sought a judicial declaration that it had no duty to defend or indemnify Applied in the Harbor litigation under either the CGL or Excess/Umbrella Policies. Northbrook specifically asserted, *inter alia*, that Applied failed to provide timely notice of Harbor's lawsuit and, consequently, forfeited any claims of coverage under the policies.

During the pendency of Northbrook's declaratory judgment action, the Harbor case proceeded to trial in mid-1996, and in October of that year, a federal jury found that Applied had wilfully and maliciously misappropriated certain Harbor trade secrets contained in the Sales Manager program. A verdict was entered in favor of Harbor and against Applied in the total amount of $5 million.

In April 1997, Northbrook successfully moved for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1996)), and Applied's timely appeal followed.

## ANALYSIS

The purpose of summary judgment under section 2—1005 of the Code is to determine whether there exist any genuine issues of material facts between the parties. *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979, 684 N.E.2d 816, 820 (1997). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, present no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Hartford Accident & Indemnity Co. v. Rush-Presbyterian-St. Luke's Medical Center*, 231 Ill. App. 3d 143,

147, 595 N.E.2d 1311, 1313 (1992). Our review of an order granting summary judgment is conducted *de novo* (*John Deere Insurance Co. v. Allstate Insurance Co.*, 298 Ill. App. 3d 371, 376, 698 N.E.2d 635, 639 (1998)), and we will construe all pleadings, depositions and affidavits in a light most favorable to the nonmoving party. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1, 7 (1995).

In its summary judgment motion, Northbrook argues in part that it has been relieved of any contractual duties to provide Applied with defense costs and indemnification of the Harbor jury's verdict by Applied's failure to give it timely notice of Harbor's complaint. As the record shows, Harbor filed its action against Applied on November 5, 1992, and Applied's in-house counsel received notice of the complaint on the same date. Yet, Applied waited until April 1994 to advise Northbrook of the Harbor suit, 17 months after the underlying complaint was served.

■ We initially note that Applied, in giving notice to Northbrook, only tendered a defense under the CGL Policy and did not specifically reference coverage under the Excess/Umbrella Policy. Notwithstanding, Applied's notice was applicable under both polices because notice by an insured to its insurance company is sufficient to charge the insurer on all policies running in the insured's favor. See *Casualty Insurance Co. v. E.W. Corrigan Construction Co.*, 247 Ill. App. 3d 326, 332-33, 617 N.E.2d 228, 233 (1993) (stating foregoing rule with regard to notice of occurrence and holding that "if an insured notifies its insurer of an occurrence and references its workers' compensation policy, it should be considered notice in regard to any general liability policy the insured might have with the same insurer").

■ An insured's duties are controlled by the terms and conditions of its insurance contract. *American Country Insurance Co. v. Bruhn*, 289 Ill. App. 3d 241, 247, 682 N.E.2d 366, 370 (1997). A notice of suit provision in an insurance liability policy is not a mere technical requirement for the convenience of the insurer, but is a valid condition precedent to the triggering of the insurer's contractual duties. *Aetna Casualty & Surety Co. v. Allsteel, Inc.*, 304 Ill. App. 3d 34, 40-41, 709 N.E.2d 680, 685 (1999); *Cincinnati Insurance Co. v. Baur's Opera House, Inc.*, 296 Ill. App. 3d 1011, 1015, 694 N.E.2d 593, 596 (1998)). Where the insured fails to comply with a notice provision, the insurer will be relieved of its duties to defend and indemnify under the policy. See *American Family Mutual Insurance Co. v. Blackburn*, 208 Ill. App. 3d 281, 291, 566 N.E.2d 889, 896 (1991); *Casualty Indemnity Exchange v. Village of Crete*, 731 F.2d 457, 460 (7th Cir. 1984); *INA Insurance Co. v. City of Chicago*, 62 Ill. App. 3d 80, 85, 379 N.E.2d 34, 38 (1978).

■ A notice of suit requirement in a policy serves the purpose of

enabling the insurer to conduct a timely and thorough investigation of the insured's claim (see *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 310-11, 631 N.E.2d 1292, 1300 (1994)), as well as to locate and participate in the defense of the insured. *Baur's Opera House*, 296 Ill. App. 3d at 1018, 694 N.E.2d at 598; see also 14 Couch on Insurance § 199:84, at 199—140 (3d ed. 1999) (notice of suit provision is to aid the insurer in the discovery of facts bearing on coverage and to afford it an opportunity to control the litigation).

■ The notice provisions contained in the policies here are nearly identical, requiring Applied to give Northbrook notice of Harbor's suit "as soon as practicable."[2] Under Illinois law, a provision calling for the insured to provide notice of a suit "as soon as practicable" requires notification be made within a reasonable time. *State Security Insurance Co. v. Burgos*, 145 Ill. 2d 423, 431, 583 N.E.2d 547, 551 (1991). Whether an insured's notice was given in a reasonable time generally depends on the facts and circumstances of the particular case. *Burgos*, 145 Ill. 2d at 431, 583 N.E.2d at 551.

■ The law expects an insured to act diligently when providing notice of a suit to its insurer (see *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 7, 639 N.E.2d 584, 588 (1993); *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d 296, 299, 388 N.E.2d 253, 255-56 (1979)), and while this determination is typically a question of fact, it may be properly resolved as a matter of law where, as here, the material facts are not in dispute. *Jones v. Universal Casualty Co.*, 257 Ill. App. 3d 842, 853, 630 N.E.2d 94, 102 (1994).

We note the majority of published decisions considering the reasonableness of an insured's notice involve alleged late notices of an "occurrence" or accident, and very few reported cases have addressed the reasonableness of an insured's notice of suit. A review of these cases reveals that, regardless of the type of notice involved, the courts generally apply the same legal principles in their analyses.

■ A lengthy passage of time in notification is not an absolute bar to a claim of defense and indemnity under a policy, provided the facts and circumstances show that the insured's delay was justifiable. *American Country Insurance Co. v. Efficient Construction Corp.*, 225 Ill. App. 3d 177, 181, 587 N.E.2d 1073, 1075 (1992); *McFarlane v. Merit Insurance Co.*, 58 Ill. App. 3d 616, 619, 374 N.E.2d 951, 953 (1978). Of

---

[2]We are aware that the Excess/Umbrella Policy does not use the word "suit" but rather refers to a "claim." Upon review of the policy language, we find the use of the term "claim" encompasses a lawsuit that is filed against the insured.

primary importance in this regard is the insured's reason for not providing notice within the period of delay at issue. *Efficient Construction*, 225 Ill. App. 3d at 181, 587 N.E.2d at 1075; *McFarlane*, 58 Ill. App. 3d at 619, 374 N.E.2d at 953; *Rivota v. Kaplan*, 49 Ill. App. 3d 910, 920, 364 N.E.2d 337, 345 (1977); see also 14 Couch on Insurance § 199:118, at 199—174 (3d ed. 1999). Absent a valid excuse, the insured's failure to satisfy the notice requirement will generally absolve the insurer of its duties under the policy.

▮ In assessing the validity of an insured's excuse, several factors are considered, including: (1) the specific language of the policy's notice provision; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that a "lawsuit" as defined under the terms of the policy has taken place; and (4) once this awareness arises, the insured's diligence and reasonable care in ascertaining whether policy coverage is available. *Amerisure Insurance Co. v. Laserage Technology Corp.*, 2 F. Supp. 2d 296, 305 (W.D.N.Y. 1998) (applying Illinois law); *Ankus v. Government Employees Insurance Co.*, 285 Ill. App. 3d 819, 825, 674 N.E.2d 865, 870 (1996); *Baur's Opera House*, 296 Ill. App. 3d at 1017, 694 N.E.2d at 597.

▮ In addition to assessing the soundness of the proffered reason, consideration in most cases is given to whether the insured's delay prejudiced the insurer. The general rule in notice cases is that the insurer need not prove prejudice (*Bruhn*, 289 Ill. App. 3d at 247, 682 N.E.2d at 370; *Kerr v. Illinois Central R.R. Co.*, 283 Ill. App. 3d 574, 584, 670 N.E.2d 759, 767 (1996); *Ankus*, 285 Ill. App. 3d at 826, 674 N.E.2d at 870), since the controlling issue is not whether the insurer's interests have been compromised by the insured's inaction but only whether reasonable notice has been given. *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 581, 485 N.E.2d 1281, 1286 (1985); *City of Chicago v. United States Fire Insurance Co.*, 124 Ill. App. 2d 340, 347-48, 260 N.E.2d 276, 280 (1970). Prejudice is merely a factor in assessing the reasonableness of the notice. *Bruhn*, 289 Ill. App. 3d at 247, 682 N.E.2d at 370; *Ankus*, 285 Ill. App. 3d at 826, 674 N.E.2d at 870; *American Country Insurance Co. v. Cash*, 171 Ill. App. 3d 9, 10, 524 N.E.2d 1016, 1017 (1988); *Illinois Valley Minerals*, 70 Ill. App. 3d at 302, 388 N.E.2d at 255; *contra Illinois Founders Insurance Co. v. Barnett*, 304 Ill. App. 3d 602, 611, 710 N.E.2d 28, 35 (1999) (" '[w]hen notice of the lawsuit is the issue, the rule is that the insurer is required to show that it was prejudiced by the insured's omission or delay in order to escape liability on its policy,' " quoting *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 807-08, 690 N.E.2d 1067, 1072 (1998)); *Baur's Opera House*,

296 Ill. App. 3d at 1017-18, 694 N.E.2d at 598 (stating same rule but also indicating that prejudice may be considered as a "factor" in the reasonableness analysis).[3]

In the present matter, Applied maintains its 17-month delay in notifying Northbrook of the Harbor suit was reasonable since it justifiably believed that coverage was not afforded under the terms of its policies. Courts have recognized that an insured's belief of noncoverage under a policy may be an acceptable excuse where the insured, acting as a reasonably prudent person, believed the occurrence or lawsuit was not covered by the policy. *Farmers Automobile Insurance Ass'n v. Hamilton*, 64 Ill. 2d 138, 142, 355 N.E.2d 1, 3 (1976) (notice of occurrence); *Amerisure*, 2 F. Supp. 2d at 305 (notice of suit); *Ankus*, 285 Ill. App. 3d at 826, 674 N.E.2d at 870 (notice of occurrence). Before a belief of noncoverage will be accepted, the law is clear that the insured must have acted as a reasonable person would have acted under the circumstances.

We find Applied's belief that coverage was not available under the policies to be unreasonable as a matter of law. The policies do not mandate Applied to give notice of every lawsuit that is filed against it, but only those suits that fall within the definition of that term, namely, any civil proceeding in which damages because of advertising injury to which the insurance applies are alleged. An insured, in deciding whether to provide notice to Northbrook, must necessarily evaluate the third-party's complaint in light of the policy provisions to ascertain whether advertising injury coverage is implicated so as to require notice of the suit. Applied accordingly should have reviewed the policies and Harbor's complaint together. Yet, Applied did not do so because, according to its general counsel, it did not understand the coverage it procured.

Applied, a corporation engaged in the business of developing computer software for the insurance industry, having obtained more than one commercial liability policy and retaining in-house and outside counsel who could have made a coverage evaluation, was not an unsophisticated insured. By failing to review the policies and the complaint together to determine whether advertising injury coverage was

---

[3]Some courts have stated that the lack of prejudice to the insurer under Illinois law is only relevant where either (1) the delay in notice was relatively brief or (2) where the insured has a good excuse for not acting. *Amerisure*, 2 F. Supp. 2d at 305; *Twin City Fire*, 266 Ill. App. 3d at 8-9, 639 N.E.2d at 8-9; *Village of Crete*, 731 F.2d at 459 (citing cases). Under this approach, the matter of prejudice is irrelevant to the court's analysis where the length of the insured's delay was substantial or where the insured's excuse is determined to be unreasonable.

implicated, Applied, and specifically Camasta as general counsel, failed to act like a reasonably prudent insured under the circumstances. A reasonable insured's attorney would have examined the complaint and relevant policy provisions to gauge the applicability of coverage rather than "assuming," as Camasta did, that coverage was excluded. A reasonable insured additionally would not have simply concluded that the advertising injury coverage was uncomprehensible. If Camasta did indeed find the policies too complicated to understand, he could have easily conferred with someone knowledgeable in the subject within a reasonable time period to determine if notice and a tender of defense should have been given to Northbrook.

We find the decision in *Amerisure* supportive of our finding here that Applied's excuse was unjustified. In that case, the insureds, Laserage Technology Corporation (Laserage) and Ciron Technologies Corporation (Ciron), each corporate entities, were covered under commercial general insurance liability policies issued by Amerisure Insurance Company (Amerisure) and Michigan Mutual Insurance Company (Michigan Mutual). These policies provided coverage in part for advertising injury. In July 1995, Laserage and Ciron were sued for various statutory and common law offenses, including trade secret misappropriation and patent infringement, allegedly committed during the effective coverage periods of the insurers' policies.

The policies at issue contained notice provisions identical to those contained in the Northbrook policies, requiring notification of any suit "as soon as practicable." Laserage and Ciron both waited eight months before advising Amerisure and Michigan Mutual about the underlying litigation. According to the record, the insureds' sole reason for the delay was their belief that coverage was not afforded under the policies. Notably, neither Laserage nor Ciron reviewed its policies before believing coverage was not available. Amerisure and Michigan Mutual ultimately filed for declaratory judgment in the federal district court of New York seeking a determination of their duties under their respective policies.

The court, applying Illinois law, held that the belief of noncoverage shared by Laserage and Ciron was unjustified. *Amerisure*, 2 F. Supp. 2d at 305. After discussing the clear wording of the policies' language and the insureds' sophistication in the area of commerce and insurance, the court concluded Laserage and Ciron "clearly failed to exercise due diligence in ascertaining whether coverage was available, as evidenced by the fact that they did not even review their policies." *Amerisure*, 2 F. Supp. 2d at 305.

Similarly, here, Applied failed to act diligently in not reviewing the complaint's allegations in light of its policies and making a good-faith

determination regarding coverage of Harbor's claims. Further, as a result of Applied's inaction, we find Northbrook was prejudiced in that it was precluded from being able to meaningfully participate in the pretrial discovery occurring prior to Applied's notification, which the record reveals to have been substantial. See *Amerisure*, 2 F. Supp. 2d at 305 (finding the insureds' delay in notification resulted in prejudice because it deprived the insurers of "the opportunity to meaningfully participate in the underlying *** litigation").

Given Applied's unjustified excuse for its delay, coupled with the prejudice experienced by Northbrook, we conclude Applied's notification of the Harbor lawsuit 17 months after the filing of the underlying complaint was unreasonably late. Northbrook therefore has no obligation to provide defense costs or indemnification under the policies.

## CONCLUSION

For the following reasons, the order of the circuit court entering summary judgment in favor of Northbrook is affirmed.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.