SEEGERS GRAIN COMPANY, INC., Plaintiff-Appellant and Counter-defendant-Appellant, v. KANSAS CITY MILLWRIGHT COMPANY *et al.*, Defendants-Appellees (United States Fidelity and Guaranty Company, Counterplaintiff-Appellee; Kansas City Millwright Company *et al.*, Counter-defendants).

First District (4th Division)   No. 1—89—3524

Opinion filed May 28, 1992.

Robert A. Clifford & Associates, of Chicago (Robert A. Clifford, Keith A. Hebeisen, and Robert P. Sheridan, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, of Chicago (Nancy Jo Arnold, Henry J. Marquard, and David T. Nani, of counsel), for appellee United States Fidelity & Guaranty Company.

JUSTICE JOHNSON delivered the opinion of the court:

Seegers Grain Company, Inc. (Seegers), plaintiff and counter-defendant, appeals from an order of the circuit court of Cook County granting a motion for summary judgment for defendants Kansas City Millwright Company (K.C. Millwright), James O'Dell (O'Dell) and United States Fidelity & Guaranty Company (USF&G). On appeal, plaintiff contends (1) the trial court erred in finding that there was no genuine issue of fact as to whether defendants' insurance policies protected against losses incurred by the collapse of a grain storage tank and (2) the trial court abused its discretion in denying plaintiff leave to file amended pleadings.

We affirm.

This appeal arises from the collapse of a grain storage facility which occurred on January 10, 1978. Seegers contracted with O'Dell, president of K.C. Millwright, to build the grain storage facility in May 1976. K.C. Millwright completed construction of the storage tank in October 1976. After the storage tank collapsed in 1978, Seegers brought an action against K.C. Millwright for breach of contract and negligence in the design and construction of the tank. The case, which was tried before a jury, resulted in a general verdict against K.C. Millwright in the amount of $2.2 million.

Prior to the erection of the storage tank, K.C. Millwright provided Seegers with a certificate of insurance stating that it had comprehensive general liability coverage from USF&G. The policy period shown on the certificate of insurance was April 1, 1976, through April 1, 1977. Seegers brought a declaratory judgment action against USF&G seeking coverage under any and all policies in effect at the time the storage tank was being built and at the time of the collapse. USF&G filed a countercomplaint seeking a declaration that it had no liability to provide defense or coverage to K.C. Millwright under its policies.

USF&G and O'Dell were unable to supply the original two primary general liability policies which provided coverage for O'Dell and K.C. Millwright. USF&G did, however, present certified copies of the applicable policies, which were reconstructed from underwriting files. Policy number 962110, in effect from April 1, 1976, through April 1, 1977, was applicable during the period the storage tank was under construction.

The primary comprehensive general liability policy in effect for K.C. Millwright while the tank was being built included completed operations for property damage. The property damage covered under completed operations coverage was expressly defined in the policy to

include only property damage which "occurs during the policy period."

Edward Halpin testified that he was the insurance agent through whom O'Dell and K.C. Millwright purchased general liability insurance for 22 years. Halpin testified that in 1976 a storage tank that K.C. Millwright built for a client in Kokomo, Indiana, had collapsed and that USF&G paid out in settlement on that claim. He stated that he received a letter from a USF&G underwriter, dated February 4, 1977, stating that due to claim experience, K.C. Millwright would no longer receive coverage after its policy expired on April 1, 1977. He further testified that shortly after the Kokomo claim he advised O'Dell that USF&G would not continue to insure K.C. Millwright after the policy expired on April 1, 1977.

Halpin further testified that USF&G agreed to extend the policy for one month, to May 1, 1977, and then another month, to June 1, 1977, while he sought to locate another insurer. He testified that, ultimately, a compromise was worked out with USF&G at the end of the policy period. He stated that USF&G would not provide completed operations coverage for the tank operation but would renew K.C. Millwright's other coverages, including completed operations for the Millwright operation. He stated that the parties agreed that there would be no return on the premium and that the renewal premium was based on K.C. Millwright sales excluding tank erection. He further stated that a renewal policy, number 69258, was issued by USF&G for the period April 1, 1977, through April 1, 1978, with an endorsement expressly excluding coverage for tank erection under the completed operation portion of the policy. This policy was applicable during the period the storage tank collapsed.

O'Dell testified during his deposition that he was aware that he had no coverage for completed operations for tank erections. He further stated that he had discussed other alternatives for insurance protection with USF&G employee James Dinwiddie. He stated that he and Dinwiddie discussed the possibility of USF&G creating an insurance pool.

In ruling on the motion for summary judgment, the trial court held that there was no coverage for this occurrence under either set of policies. The court found that policy number 962110, in effect from April 1, 1976, to April 1, 1977, had expired at the time of the occurrence. The court also found that policy number 69258, in effect at the time of the collapse, excluded completed operations coverage for tank erection. The court concluded that the policy contained an endorsement excluding completed operations coverage for tank erection. The

court stated that it based its finding, in part, on the testimony of the insured, O'Dell, who made it clear that he understood coverage for tank erection was excluded under the policies.

On appeal, plaintiff contends that the trial court erred in granting USF&G's motion for summary judgment because there is an issue of fact as to whether the renewed insurance policy protected against losses incurred by the storage tank collapse.

A motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).

In ruling on a motion for summary judgment, the evidence must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) However, "the nonmoving party must come forward with evidentiary material that establishes a genuine issue of fact." (*Schnering v. Midlothian Park District* (1991), 219 Ill. App. 3d 664, 666.) "[T]he opponent of the motion cannot rely simply on his complaint or answer to raise an issue of fact when the movant 'supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law.' " (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294, quoting *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) Lastly, the trial court's decision to grant a motion for summary judgment will not be reversed absent an abuse of discretion. *Schnering*, 219 Ill. App. 3d at 666.

Upon review, we do not believe plaintiff has come forward with evidentiary material that establishes a genuine issue of fact. Plaintiff argues that USF&G failed to explain why the original insurance policies are unavailable and that there is no basis in the record for finding that the reconstructed policies are accurate. We disagree.

William Cipra, a USF&G claims supervisor, testified in his deposition that the customary practice is to send the original policy to the insured at the time the policy is issued. The insurer, in this case USF&G, retained a declaration sheet, which references the policy forms that are a part of the policy at the time it is issued. He stated that a certified copy of the policy is one which has been put together by the insurer in a packet that represents the policy as issued to the insured. Cipra testified that he requested USF&G employees Michael McEwen and Kathy Wise to prepare certified copies of the two primary policies that had been issued to K.C. Millwright.

McEwen testified that after Wise located the files he checked each item against the declaration sheet and then signed the certifica-

tion of the policies. Wise testified in her deposition that USF&G's policy files contained a copy of the declaration sheet and copies of any endorsements that bore typing. She stated that she put everything together and affixed the certification stamp for McEwen's signature. She further testified that she had followed this same procedure to prepare certified copies of other policies on many previous occasions.

The trial court found that USF&G presented testimony that the policies were reconstructed in accordance with customary insurance industry practice. The trial court stated that the reconstructed policies were put together as best as possible from USF&G's internal manual volumes in accordance with customary insurance industry practice. The court further stated that it was moving forward on the reconstructed policies without any likelihood that different policies would emerge at a later time.

■ Plaintiff further argues that there is a presumption that USF&G fabricated new policies with terms favorable to itself and that the testimony by USF&G employees is insufficient to establish the verity of the reconstructed policies. However, allegations which are unsupported by the record "do not raise a question of fact where affidavits and depositions in support of a motion for summary judgment contain evidentiary facts to the contrary." *Pearson v. Partee* (1991), 218 Ill. App. 3d 178, 183.

In this case, plaintiff has not put forth any evidence to contradict testimony that the certified copies of the policies are what they purport to be, nor is there any evidence in the record to refute the fact that the tank exclusion endorsements were a part of the USF&G policy file. We find that plaintiff's allegations are unsupported by the record and are, therefore, insufficient to establish a material issue of fact.

Plaintiff raises a series of questions which attack the credibility of the reconstructed policies and which tend to disprove the trial court's finding that the reconstructed policies were compiled in conformance with industry standards. For example, plaintiff contends that since there was not a reduction in the premium K.C. Millwright paid when tank erection operations were excluded from the renewal policy, the policy must have been reconstructed with terms favorable to USF&G. Plaintiff also contends that since other K.C. Millwright customers had received a certificate of insurance showing completed operations coverage while the renewal policy was in effect, it also must have been covered.

First, these contentions are addressed in the record. Halpin testified that the parties agreed there would be no return of premium on

the renewal policy. As for the certificate of insurance, it expressly states that the referenced coverage is "as per policy conditions" and therefore would not apply to plaintiff's policy. Second, even if plaintiff's contentions were not addressed in the record, the trial court's finding that there was no genuine issue of fact was based on evidence in the record and not on plaintiff's unsubstantiated allegations. Bearing in mind that allegations that a triable issue of fact exists do not create such an issue (*Cincinnati Insurance Co. v. Argubright* (1986), 151 Ill. App. 3d 324, 329), we find that plaintiff's allegations do not rise to the level of evidentiary facts sufficient to preclude summary judgment.

We also believe that USF&G has supplied facts which would entitle it to judgment as a matter of law. The trial court reviewed sworn affidavits and depositions from several witnesses who testified that the policies were reconstructed in conformance with industry standards. The reconstructed renewal policy, by its expressed terms, excludes claims for property damage arising out of completed tank erection operations performed by K.C. Millwright. In addition, O'Dell, president of the insured company, K.C. Millwright, testified that he knew when the renewal policy was issued that it did not include coverage for completed operations for tank erection. O'Dell stated that "Mr. Dinwiddie of USF&G drove it through my head that we weren't going to have coverage." Edward Halpin, the insurance broker through whom O'Dell purchased insurance for 22 years, testified that USF&G did not provide completed operations coverage for tank operations.

We find that the trial court did not err in finding that there was no genuine issue of fact as to whether the reconstructed renewal policy protected against losses incurred by the collapse of the grain storage tank.

We also find that the trial court did not err in finding that policy number 962110, in effect from April 1, 1976, through April 1, 1977, had expired at the time of the grain storage collapse. The record amply supports a finding that policy number 962110 was an occurrence policy, which means it applied to cover damage that occurred during the policy period. The trial court found that since no occurrence was shown to have taken place while the first policy was in effect, there could be no coverage for events taking place after the policy terminated. Plaintiff's contentions that the expired policy is applicable because K.C. Millwright's negligent acts in erecting the tank were committed during the term of the policy have been rejected by the Illinois courts. See *Cobbins v. General Accident Fire & Life Assurance Corp.*

(1972), 53 Ill. 2d 285; *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361.

■■ Plaintiff also contends that the trial court erred in not allowing it to file an amended complaint before the hearing on USF&G's motion for summary judgment.

"Whether to allow amendment of pleadings is within the [sound] discretion of the trial court, whose determination may not be disturbed on review in the absence of abuse, upon consideration of the timeliness of the amendment and whether the opponent was prejudiced or surprised thereby." (*Carlisle v. Harp* (1990), 200 Ill. App. 3d 908, 915.) Further, a party does not have "an absolute right to amend an answer and it is not favored after trial commences." *Carlisle*, 200 Ill. App. 3d at 915.

The complaint alleged that USF&G should be estopped from asserting the exclusion for completed operations in effect at the time of the occurrence because it had relied on the certificate of insurance to determine that it did not need to insure the property itself. In order to establish estoppel against an insurer, a party must prove that he was misled by an act or statement of the insurer, that he relied on this conduct or representation, that such reliance was reasonable, and that he was prejudiced thereby. See *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 304.

The trial court found that the certificate of insurance which plaintiff was given showed on its face that the coverage expired on April 1, 1977. The court found that since the scope of the coverage had long expired by the time the storage bin collapsed, it was unreasonable for plaintiff to rely on the certificate of insurance to provide coverage. The court also found that estoppel could not arise against USF&G for the alleged failure to notify plaintiff of coverage exclusions.

We agree with the trial court that it was unreasonable for plaintiff to rely on the certificate of insurance to provide coverage beyond the scope of its coverage. We therefore find that the trial court did not abuse its discretion in not permitting plaintiff to file an amended complaint alleging that USF&G was estopped to deny it coverage.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.