SECOND DIVISION
 DECEMBER 10, 1996
 Nunc Pro Tunc OCTOBER 22, 1996





1-95-3266

ALGIS ANKUS, Special Adm'r of 
the Estate of Ona Ankus, Deceased,

 Plaintiff-Appellant,

 v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY and COMMERCIAL UNION
INSURANCE COMPANY,

 Defendants-Appellees.
) Appeal from the
) Circuit Court of
) Cook County.
)
) No. 94 CH 5275
)
) The Honorable
) Albert Green,
) Judge Presiding.
)
)
)
 JUSTICE DiVITO delivered the opinion of the court: 

 Original plaintiff Ona Ankus (Ona) was injured in an
automobile accident. She brought this complaint for declaratory
judgment against defendants Commercial Union Insurance Company
(Commercial Union) and Government Employees Insurance Company
(Geico), seeking an adjudication as to their liability regarding
her uninsured motorist claim. The circuit court granted summary
judgment in favor of both Commercial Union and Geico. Following
Ona's death, her son, plaintiff Algis Ankus (Algis), was appointed
special administrator for the purposes of this action. He appeals
the grants of summary judgment. For the reasons that follow, we
affirm.
 In his deposition, Algis testified that on June 10, 1984, he
was driving north on Lake Shore Drive in Chicago in his Toyota
Supra. Ona was a passenger in his car, while his wife, Lynda
Twist, followed directly behind in a Honda Accord. He struck the
rear of a black Pontiac that cut in front of him. When he braked
and hit the Pontiac, his wife hit him. Ona was injured,
subsequently claiming damages of $10,000. 
 Algis testified that he pulled to the side of the road behind
the Pontiac, but it pulled away. Neither the Pontiac nor its
driver was ever identified. 
 At the time of the accident, Algis was employed by Cardiac
Pacemakers, Inc. Commercial Union provided uninsured motorist
coverage for individuals injured while riding in cars owned by
Cardiac Pacemakers. 
 On June 9, 1986, Ona filed a demand for arbitration against
Commercial Union with the American Arbitration Association. 
Although the American Arbitration Association closed its file on
the matter on February 7, 1989, Ona again demanded arbitration on
December 6, 1990. Her deposition was taken on October 11, 1991. 
 Although the matter was set for arbitration on February 9,
1994, Commercial Union refused to participate because, among other
reasons, it had not deposed Algis. The matter was reset for
September 7, 1994.
 On May 23, 1994, Algis' sworn testimony was taken. On June 9,
1994, Commercial Union advised Ona's attorney that it would deny
coverage because Algis was the owner of the car in which Ona was a
passenger and the coverage that it provided to Cardiac Pacemakers
was limited to cars owned by Cardiac Pacemakers. Commercial Union
stated that it believed that Algis had coverage through Geico. 
 On June 9, 1994, Ona notified Geico that she was making an
uninsured motorist claim. That day, she brought a complaint for
declaratory judgment against Commercial Union and Geico seeking an
adjudication as to their liability. 
 On April 11, 1995, summary judgment was granted in favor of
Commercial Union and, on August 15, 1995, in favor of Geico. 
Following Ona's death from causes unrelated to the 1984 accident,
Algis was appointed special administrator for the purposes of this
litigation. He appeals the grants of summary judgment.
 Plaintiff first contends that the circuit court erred in
granting summary judgment in favor of Commercial Union. He argues
that Commercial Union is estopped from denying coverage by its
eight-year delay in denying coverage because Ona detrimentally
relied on its indications that it was the insurer of his vehicle. 
We note that plaintiff does not contend that Algis was in fact
covered by Cardiac Pacemakers' policy. Commercial Union responds
that plaintiff cannot establish any of the elements of estoppel. 
 In appeals from an order granting summary judgment, a
reviewing court examines the record de novo. In re Estate of
Hoover, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). A court must
consider the affidavits, depositions, admissions, exhibits, and
pleadings on file and must construe the evidence strictly against
the movant. Hoover, 155 Ill. 2d at 410. Summary judgment is
appropriate if there are no genuine issues of material fact and the
movant is entitled to judgment as a matter of law. Outboard Marine
Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607
N.E.2d 1204 (1992). 
 Estoppel "'prevents the assertion of a contractual condition
by a party who, through words or conduct, has fostered the
impression that the condition will not be asserted as a legal
defense.'" Schoonover v. American Family Insurance Co., 214 Ill.
App. 3d 33, 45, 572 N.E.2d 1258 (1991), appeal denied, 141 Ill. 2d
560, 580 N.E.2d 134 (1991), quoting First Federal Savings & Loan
Ass'n v. Nationwide Mutual Fire Insurance Co., 460 A.2d 543, 545
(Del. 1983). An insurer is estopped from denying coverage where
the insured can establish that he was misled by an act or statement
of the insurer, he reasonably relied on the conduct or
representation, and he was prejudiced thereby. Seegers Grain Co.
v. Kansas City Millwright Co., 230 Ill. App. 3d 565, 571, 595
N.E.2d 113 (1992), appeal denied, 146 Ill. 2d 652, 602 N.E.2d 476
(1992). The burden of establishing estoppel rests with the
insured, who must prove it by clear, concise, and unequivocal
evidence. Western Casualty & Surety Co. v. Brochu, 105 Ill. 2d
486, 500, 475 N.E.2d 872 (1985). 
 Cases in which an insurer is estopped from denying coverage
typically involve a concession of liability by the insurer, advance
payments made by the insurer, or statements made by the insurer
that encourage the plaintiff to delay filing his action. 
Schoonover, 214 Ill. App. 3d at 45.
 In claiming that it effectively reserved its right to deny
coverage, Commercial Union relies on an August 1986 letter that it
sent to Ona's attorney in response to her first demand for
arbitration. That letter provided in relevant part:
 "In reviewing the file, it appears that there
 may be a coverage question which exists. The
 demand for arbitration that you filed with the
 American Arbitration Association was filed on
 June 9, 1986 and was not received by
 Commercial Union Insurance Company until June
 11, 1986. This was the first notice that
 Commercial Union Insurance Company received
 that your client, Ona Ankus, was making an
 uninsured motorist claim arising out of the
 accident in question of June 10, 1984. Please
 advise as to whether or not you have filed a
 lawsuit on behalf of Ona Akus [sic] against
 Algis Ankus, the driver of the vehicle in
 front of the vehicle in which Ona Ankus was
 riding. It is our understanding that the
 vehicle being operated by Algis Ankus was
 insured by Geico. If such a lawsuit was not
 filed against Algis Ankus prior to the running
 of the applicable statute of limitations, it
 would seem that the subrogation rights of
 Commercial Union Insurance Company relative to
 Ona Akus' [sic] uninsured motorist claim have
 been prejudiced thereby creating the
 aforementioned coverage question. 
 Accordingly, Commercial Union Insurance
 Company reserves all of its rights relative to
 this coverage question." 
 In reserving all of its rights relative to this coverage
question, a subrogation claim, Commercial Union failed to reserve
its rights regarding the specific coverage defense here--that Algis
was not covered by its policy.
 From the quoted language, however, it is clear that Commercial
Union did not convey the impression that it was the insurer of
Algis' vehicle. Not only does the letter state that it was
Commercial Union's understanding that Algis' car was insured by
Geico, but it also shows that Commercial Union was under the
mistaken impression that Ona was in the Honda Accord driven by
Twist, not in Algis' Toyota Supra. The reasonablenss of this
mistaken impression is supported by two facts. First, the police
report mistakenly lists Ona as being a passenger in vehicle number
one, the hit and run vehicle, and the total number of occupants of
both Twist's and Algis' cars is recorded as two. Thus, the police
report is unclear as to which car Ona was riding in. 
 Moreover, Commercial Union insured the Honda Accord, a fact of
which Algis was aware. The record on appeal shows that Cardiac
Pacemakers sent a letter to Commercial Union regarding repairs to
an "insured vehicle"; Algis sent a letter to Cardiac Pacemakers
requesting reimbursement for repairs to a "company car"; and
Commercial Union paid Cardiac Pacemakers for a June 1984 claim for
repairs to a Honda Accord. We note that Algis did not request that
Commercial Union pay for property damage to the Toyota Supra that
he was driving. Thus, based upon an inaccurate police report and
payment for property damage to the Honda, it was not unreasonable
for Commercial Union to assume that Ona was in the Honda driven by
Twist, not in the Toyota Supra driven by Algis.
 Significantly, Ona did nothing to correct this mistaken
impression until February 26, 1991, when her attorney sent the
American Arbitration Association a letter stating that Ona was in
the car operated by Algis. Shortly thereafter, in a letter dated
April 22, 1991, Commercial Union confirmed that it would take Ona's
deposition and it reserved its rights regarding "any and all
coverage defenses which it may have." 
 Because Ona knew that Commercial Union was operating under a
mistaken assumption regarding coverage and did nothing to correct
it, plaintiff has failed to raise a genuine issue of material fact
that, in the period before April 22, 1991, Ona reasonably relied on
any acts or representations of Commercial Union in participating in
the litigation. Commercial Union in no way impliedly conveyed the
impression that it was Algis' insurer. Moreover, in the April 22,
1991, letter, Commercial Union reserved its rights regarding any
coverage defenses that it might have. That letter is further
evidence that Commercial Union did not foster any impression that
it would pay the claim. 
 As for the events from April 1991 to February 1994, Commercial
Union sent 12 letters requesting Ona's attorney's help in taking
Algis' deposition. In March 1994, Ona's attorney stated that he
would not aid Commercial Union in locating Algis or in taking his
deposition. Ona's attorney's refusal to help Commercial Union
locate Algis further militates against any finding that Commercial
Union was somehow misleading Ona or that Ona was prejudiced by the
delay, a delay that could have easily been avoided simply by
providing Algis' location.
 Following Ona's attorney's refusal to help, Commercial Union
hired a private investigator, who promptly located Algis. On March
22, 1994, Commercial Union requested Algis' sworn statement. His 
deposition was taken on May 23, 1994, and coverage was denied June
9, 1994. Thus, once Commercial Union had the proof necessary to
deny coverage, it did so in a timely manner.
 In short, although Commercial Union participated in
preliminary matters related to the arbitration, plaintiff has
failed to raise a genuine issue of material fact that Ona
reasonably relied on its actions or that she was genuinely misled
by them. Ona waited two years before first indicating that she
would seek an uninsured motorist claim by filing a demand for
arbitration. She failed to pursue arbitration, causing the
American Arbitration Association to close its file on the matter,
and then she waited approximately 10 months to refile her demand. 
Most important, she permitted Commercial Union to operate on a
mistaken assumption for approximately five years. When notified
that Algis was the driver of the car, Commercial Union reserved all
coverage issues, and when it had proof that he was in fact the
driver, it promptly denied coverage. 
 Arguably, Commercial Union was not without culpability for the
delay. It could have promptly hired a private investigator to
locate Algis, rather than waiting for the information from Ona'a
attorney, and it could have taken some independent action to
determine in which car Ona was a passenger. Nevertheless, because
of Ona's and Algis' knowledge, plaintiff cannot now contend that
Ona was misled by Commercial Union's behavior, especially in light
of the August 1986 letter that stated that it was Commercial
Union's understanding that Algis was insured by Geico.
 As for plaintiff's contention that a surreply would have
provided additional facts essential to the circuit court's
determination, he made no offer of proof in the circuit court as to
what those facts might be nor has he provided affidavits attesting
to those facts on appeal. Thus, we have no basis for concluding
that a surreply would have aided his case. 
 Accordingly, plaintiff has failed to raise a genuine issue of
material fact as to whether Commercial Union should be estopped
from denying coverage. The grant of summary judgment in favor of
Commercial Union is affirmed.
 Plaintiff also challenges the circuit court's grant of summary
judgment in favor of Geico. He contends that Ona served Geico with
notice of her claim the day that she became aware that its policy
applied to her claim. Geico responds that Ona failed to act as a
reasonably prudent person in giving notice 10 years after the
accident.
 In Illinois, timely notice of an insurance claim is not merely
a technical requirement but is a valid prerequisite to coverage. 
Industrial Coatings Group, Inc. v. American Motorists Insurance
Co., 276 Ill. App. 3d 799, 807, 658 N.E.2d 1338 (1995). The time
within which notice must be provided is determined by a standard of
reasonableness. Fletcher v. Palos Community Consolidated School
District No. 118, 164 Ill. App. 3d 921, 926, 518 N.E.2d 363 (1987). 
Four factors are utilized in assessing the reasonableness of an
insured's actions: (1) the language of the policy's notice
requirement; (2) the extent of the insured's sophistication in the
world of commerce and insurance; (3) awareness on the part of the
insured that an "'occurrence'" has taken place; and (4) once aware
of an occurrence, the diligence with which the insured ascertains
whether coverage is available. Brownlee v. Western Chain Co., 74
Ill. App. 3d 804, 809, 393 N.E.2d 515 (1979). Courts have also
considered whether prejudice to the insurer has resulted from the
delay. Olivieri v. Coronet Insurance Co., 173 Ill. App. 3d 867,
871, 528 N.E.2d 986 (1987). 
 Here, Geico's unambiguous notice requirement provided that
notice must be given "[a]s soon as possible after an accident." 
Moreover, the parties do not dispute Ona's lack of sophistication
or her immediate awareness of an "occurrence." 
 The parties disagree as to whether Ona acted with diligence in
waiting approximately 10 years to ascertain whether policy coverage
was available. Plaintiff contends that Ona relied on Commercial
Union's representations; she had no way of knowing that Geico's
policy covered her claim; she notified Geico on the day she learned
of the policy; and Geico was not prejudiced by the delay. 
 Despite her relative lack of sophistication in insurance
matters, however, Ona was advised by Commercial Union in 1986 that
it was its understanding that Algis' car was insured by Geico. 
Although this statement was not definite, it should have been
sufficient for her attorney to investigate whether Algis' car was
in fact covered. Coverage could have been confirmed by a simple
phone call to Geico or a request for the policy. Thus, Ona was not
reasonably diligent in ascertaining whether Geico insured
plaintiff's car. Combining that factor with the unambiguous
language of the policy and her immediate awareness of the accident,
we conclude that plaintiff failed to raise a genuine issue of
material fact as to whether Ona acted as a reasonably prudent
person in notifying Geico of her claim, whether or not Geico was in
fact prejudiced by the delay in notification.
 Plaintiff contends, however, that even if the notice was late,
its untimeliness is excused by City of Chicago v. United States
Fire Insurance Co., 124 Ill. App. 2d 340, 260 N.E.2d 276 (1970). 
In that case, the court held that late notice may be excused where
the insured, acting as a reasonably prudent person, believed that
the accident was not covered by the policy. United States Fire,
124 Ill. App. 2d at 346. In light of our conclusion that Ona
failed to act as a reasonably prudent person, however, we reject
that contention.
 Accordingly, Geico was under no duty to provide the uninsured
motorist coverage requested. The grant of summary judgment in
favor of Geico is affirmed. 
 The judgments of the circuit court are affirmed.
 Affirmed.
 HARTMAN, P.J., and SCARIANO, J., concur.